**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5819-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MALIK L. CANTY, a/k/a
CANTY FUQUAN,

     Defendant-Appellant.

_____

Submitted November 10, 2020 – Decided December 2, 2020

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-02-0089.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the briefs).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant was convicted of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); third-degree intent to distribute a CDS, N.J.S.A. 2C:35-5(a)(1), (b)(3); and second-degree intent to distribute a CDS within 500 feet of a public park, N.J.S.A. 2C:35-7.1. After merger, the court sentenced defendant to an eight-year prison term with a thirty-two-month period of parole ineligibility and assessed fines and penalties. Defendant raises the following issues on appeal:

I. THE COURT UNDERMINED MR. CANTY'S DEFENSE BY FAILING TO INSTRUCT THE JURY, CONSISTENT WITH THE MODEL CHARGES, THAT THE IDENTITY OF THE PERSON WHO COMMITTED THE CRIME IS AN ELEMENT OF THE OFFENSE WHICH THE STATE HAS THE BURDEN OF PROVING BEYOND A REASONABLE DOUBT, AND THE IMPACT DISTANCE HAS ON THE ACCURACY AND RELIABILITY OF AN IDENTIFICATION. U.S. Const., Amends. V, XIV; N.J. Const., Art. I, Pars. 1, 9, 10. (Not Raised Below).

II. A REMAND IS NECESSARY TO CORRECT THE JUDGMENT OF CONVICTION SO THAT IT ACCURATELY REFLECTS THE COURT'S ORAL PRONOUNCEMENT THAT COUNTS ONE AND THREE MERGE INTO COUNT FIVE.

III. MR. CANTY'S SENTENCE IS EXCESSIVE, UNDULY PUNITIVE, AND MUST BE REDUCED.

A-5819-17T1

After carefully reviewing the record and the applicable legal principles, we affirm defendant's convictions and sentence but remand for the court to correct the Judgment of Conviction (JOC) to accurately reflect the merger of the possession and distribution convictions into defendant's conviction for distribution within 500 feet of a public park and to correct any assessed fines and penalties.

I.

In August 2015, the Plainfield Police Division (Division) received a tip that two individuals were distributing heroin in Plainfield. This source also provided a phone number that the individuals purportedly used to conduct these narcotic transactions. Detective Michael Metz began text messaging the number provided and arranged to purchase ten folds of heroin. In preparation for the purchase, the Division equipped Detective Metz with a "wireless audio transmitter" so other detectives could monitor the transaction. The Division also provided Detective Metz with $80 of marked currency which would be used to purchase the heroin.

Detective Metz was directed to an initial location but when he arrived, he was instructed by text message to go to a second location at Cedar Brook Park. Once there, Detective Metz received a phone call from a different number. The

caller, who was later identified as Melissa McPartland (McPartland), instructed Detective Metz to go to yet a third location in Plainfield on Laramie Road. After arriving, Detective Metz pulled over and McPartland entered the front passenger side of his undercover vehicle.

Once in the vehicle, McPartland proceeded to pull several glassine folds of heroin out from her bra. McPartland then placed the heroin back in her bra and told Detective Metz that it was "trash" and she was "going to wait for Ace to bring [them] some better stuff." McPartland stated her boyfriend Arvin Rivas (Rivas) was going to assist in the transaction and that Ace drove a red Pontiac.

Detective Metz then noticed Rivas approach the vehicle's front passenger side and speak with McPartland. He handed Rivas $70 in marked currency which was understood to be for the heroin. Rivas stepped away and used his cellphone to send text messages and make calls. Detective Metz stated that he could not hear Rivas's conversation but that he "seemed aggravated" during this exchange.

When Rivas was finished with the conversation, he entered the vehicle's rear seat and told Detective Metz that they had "to go to see Ace because [he] [wa]sn't going to come to [them]." Rivas then instructed Detective Metz to drive to Arlington Avenue. Upon arriving, Rivas told McPartland that he "needed

4

something to put [the heroin] in."  McPartland then handed Rivas the plastic wrapping from a cigarette container.  Rivas exited the vehicle and crossed Arlington Avenue out of Detective Metz's view.

Sergeant Troy Alston, who was involved in the investigation, testified he was able to hear Detective Metz's conversations through the wireless transmitter. He described his observations after he arrived on Arlington Avenue:

> Once Mr. Rivas got out of the vehicle and I got my position . . . , he walked up to the gentleman in the gray suit, who was standing in front of his residence.
>
> [State]:  When you say the gentleman in the gray suit, is that someone in this courtroom?
>
> [Sergeant Alston]:  Yes.  Mr. Canty.
>
> [Attorney for defendant]:  Stipulate, Judge.
>
> The Court:  Thank you.

Sergeant Alston testified that he observed Detective Metz's and Rivas's interactions from "[a] couple houses" away or approximately "150 . . . , 200 feet."  He stated there was nothing obstructing his view, that it had rained earlier in the day but was no longer raining, and it was daylight out.  At a suppression hearing, Sergeant Alston testified that he was familiar with defendant from previous narcotics investigations but did not so state at trial.

Sergeant Alston testified that defendant was already standing on the Arlington Avenue sidewalk when Rivas walked up to him. He then saw Rivas hand defendant "currency or . . . paper," which defendant "fiddled" with before putting it in his pocket and walking with Rivas to the rear of the Arlington Avenue home out of Sergeant Alston's view.

After a minute or two, Sergeant Alston saw Rivas reappear and "adjust[] his waistband." Rivas then re-entered the vehicle and instructed Detective Metz to drive back to Laramie Road. During the drive back, Detective Metz asked Rivas whether they were "good," meaning whether "he ha[d] the drugs," and Rivas responded "yes." Detective Metz then handed Rivas $10 in marked currency as "a tip." As Detective Metz's vehicle approached Laramie Road, nearby officers pulled the vehicle over and arrested Rivas and McPartland. The officers recovered twenty-seven folds of heroin and one film of suboxone[1] from Rivas.

After Detective Metz, McPartland, and Rivas left Arlington Avenue, Sergeant Alston stated he saw defendant exit the Arlington Avenue home and enter a Pontiac. Nearby takedown units arrested defendant and recovered three

---

[1] Suboxone is a CDS, N.J.S.A. 2C:35–10(a)(1) and used to treat opioid dependence.

of the marked $20 bills and a cellphone, which contained text messages to Rivas's phone about the drug deal.

The State charged defendant with third-degree possession of heroin and suboxone, N.J.S.A. 2C:35-10(a)(1) (counts one and two); third-degree intent to distribute heroin and suboxone, N.J.S.A. 2C:35-5(a)(1), (b)(3) (counts three and four); and second-degree intent to distribute heroin and suboxone within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (counts five and six).

At trial, McPartland testified that she did not know defendant other than "[a]s a neighbor." Rivas stated that when he was at the Arlington Avenue home, he purchased the heroin from "A or Unc[, b]ut his real name is Rick." He also stated that Unc lived in the basement of the Arlington Avenue home and that he handed the $60 in marked bills to Unc, not defendant. Rivas testified that he did not intend to give the heroin to Detective Metz but rather was going to keep it for himself.

The court's jury instructions did not contain an identification charge. The jury returned a verdict and found defendant guilty of counts one, three, and five, (the heroin charges) and not guilty of counts two, four, and six (the suboxone charges). Judge Deitch denied the State's request to sentence defendant as a persistent offender, N.J.S.A. 2C:43-7 and 2C:44-3(a), but granted its request to

sentence defendant to a mandatory extended term on count three pursuant to N.J.S.A. 2C:43-7 and 2C:43-6(f).

Before issuing its sentence, the court applied aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense."), based on defendant's prior drug use and his "lack of stable employment." The court applied aggravating factor six, N.J.S.A. 2C:44-1(a)(6) ("The extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted."), based on defendant's six prior convictions. Applying aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law."), the court found "a real and definite need to deter" defendant from engaging in further criminal conduct. Finally, the court found aggravating factor eleven, N.J.S.A. 2C:44-1(a)(11) ("[Not] imposing a term of imprisonment would be perceived by the defendant or others merely as part of the cost of doing business."), applicable after concluding "a noncustodial sentence or a slight sentence would be seen by the defendant or others simply as a cost of doing business." The court also considered the application of mitigating factors and concluded the aggravating factors "substantially outweigh the mitigating factors, which are nonexistent."

The court then merged counts one and three into count five, a second-degree crime with a sentencing range of five to ten years. The court "declin[ed] to impose a discretionary extended term as requested by the State," which would have converted the sentencing range on the merged count to ten to twenty years or that of a first-degree crime, because other sentencing options would better "serve the interests of justice." The court also noted it declined to impose the discretionary extended term on count five because it was "impressed by the fact that [defendant] ha[s] a loving and supportive family" and defendant "came into court and . . . owned up to what happened." However, because of defendant's extensive criminal history the court concluded this "was [not] a one-off thing" aimed to "str[ike] the right balance between the crime, the punishment[,] and the person here."

On count one, the court sentenced defendant to four years imprisonment with sixteen months of parole ineligibility. The court sentenced defendant on count three to eight years of imprisonment with a period of thirty-two months of parole ineligibility. On the final merged count, the court sentenced defendant to eight years of imprisonment with a period of thirty-two months of parole ineligibility. The JOC provides that sentencing on counts one, three, and five are "to run concurrent" but also indicates that count one and three merge into

9

count five. The court also imposed corresponding fines on each count totaling $4455. This appeal followed.

## II.

In defendant's first point, he contends for the first time on appeal that the court committed error in failing to give an identification charge because "the prime thrust of [defendant's] defense challenged [his] identification . . . and specifically, pointed to the well-known estimator variable of distance." He claims that an identification charge was appropriate because "not a single witness . . . could . . . point out [defendant] and say, I saw drugs in his possession." As a result, defendant concludes the court should have "provide[d] . . . instruction on eyewitness identification . . . [and] application of the estimator variable of distance." In support, defendant relies upon the Supreme Court's opinions in State v. Henderson, 208 N.J. 208 (2011), and State v. Cotto, 182 N.J. 316 (2005), and our decision in State v. Davis, 363 N.J. Super. 556 (App. Div. 2003). We disagree with defendant's arguments.

We review a "missing instruction on identification . . . for plain error." State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (citations omitted). "Any error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." Ibid. The possibility

of such an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Defendant carries the burden of showing plain error. State v. Morton, 155 N.J. 383, 421 (1998).

We consider "[d]efendant's failure to 'interpose a timely objection [to] constitute[] strong evidence that the error belatedly raised here was actually of no moment.'" State v. Tierney, 356 N.J. Super. 468, 481 (App. Div. 2003) (quoting State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999)). Absent a request to charge or objection, "there is a presumption that the charge . . . was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing Macon, 57 N.J. at 333-34).

Further, any alleged plain "error must be evaluated 'in light of the overall strength of the State's case.'" Sanchez-Medina, 231 N.J. at 468 (quoting State v. Galicia, 210 N.J. 364, 388 (2012)) (addressing an identification issue where "[d]efendant's convictions rest largely on the testimony of four victims, only one of whom could identify him" as "[t]he witnesses' descriptions of their assailants varied").

In Henderson, a defendant challenged an identification on the ground police officers had unduly influenced the eyewitness. 208 N.J. at 217. The

eyewitness initially expressed doubt about the identity of the perpetrator but was able to confidently identify the defendant after meeting with investigators. Id. at 223-24. The Court identified numerous factors that can affect the ability of a witness to remember and identify perpetrators of crimes, resulting in misidentifications, and ordered an amplified, comprehensive jury charge. Id. at 298-99. The Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (rev. July 19, 2012) was then drafted and adopted by the Court.

In Sanchez-Medina, the Court made clear that "[w]hen eyewitness identification is a 'key issue,' the trial court must instruct the jury how to assess the evidence—even if defendant does not request the charge." Id. at 466 (quoting Cotto, 182 N.J. at 325). For the failure to deliver the charge to be plain error, however, identification must be "a critical issue at trial that defendant disputed." Id. at 469; see also Cotto, 182 N.J. at 325. An issue is made a "key issue" if it is "the major, if not the sole, thrust of the defense." State v. Green, 86 N.J. 281, 291 (1981). And, we must also consider the error "in light of 'the totality of the entire charge, not in isolation.'" Ibid. (citation omitted).

Based on our independent review of the record, we conclude that the trial court's failure to give a detailed identification charge is not "of such a nature as

12

to have been clearly capable of producing an unjust result." See R. 2:10-2. Here, the jury was clearly instructed that the State must prove beyond a reasonable doubt that defendant committed the crimes for which he was charged. In this regard, the court specifically instructed the jury to determine whether "the State has proven beyond a reasonable doubt that the defendant[] violated a specific criminal statute." The court's reasonable doubt charge repeatedly referred to "defendant's guilt." Further, when detailing the elements of each of the charges against defendant, the court repeatedly stated that an element of each is "[t]hat the defendant possessed . . . heroin [or suboxone]."

Additionally, the court charged the jury to "weigh the testimony of each witness and then determine the weight to give it," specifically asking the jury to consider a witness's "means of obtaining knowledge of the facts" and to the extent the witness is "corroborated or contradicted . . . by other evidence." The court also charged the jury on circumstantial evidence stating "[i]t is not necessary that all the facts be proven by direct evidence" and that a guilty verdict "may be based on . . . circumstantial evidence alone or a combination of direct evidence and circumstantial evidence."

Defendant's reliance on State v. Davis for the proposition that trial courts have a duty "to instruct the jury on the prosecution's burden of proving

13

identification, even without a defense request" is misplaced. See 363 N.J. Super. at 558. In Davis, we found "[o]n the facts presented," the absence of a detailed identification charge constituted plain error. Id. at 558-62. The defendant in Davis was convicted of distributing cocaine within 100 feet of a school after he purportedly sold it to a Drug Enforcement Agency officer who had never seen him before and identified him twenty-five minutes after the drug transaction through a single photo. Ibid. We described defendant's case as "squarely one of misidentification" and noted "it is possible that the corroborative evidence against a defendant may be sufficiently strong that the failure to give an identification instruction does not constitute plain error." Ibid. (citing State v. Salaam, 225 N.J. Super. 66, 70 (App. Div. 1988)). Based on the facts before us in that case, we found plain error in part because "the court gave no instruction whatsoever as to the State's obligation to prove identification beyond a reasonable doubt." We noted "the complete absence of any reference to identification as an issue or as an essential element of the State's case is improper." Ibid.

Defendant also relies on State v. Cotto for the proposition that "the trial court never explained to [defendant]'s jury that the State had the burden of proving that he was the individual who committed the crime." See 182 N.J. at

325-26. In that case, the Supreme Court, despite concluding that identification was a "key" issue, nonetheless affirmed a conviction where the jury was not provided a detailed identification charge. Id. at 326-27. The Court held a jury is properly instructed if the charge makes clear that "the State bears the burden of proving beyond a reasonable doubt that the defendant is the wrongdoer." Ibid. The Court found the charge to that jury, which stated the State must prove "each and every element of the offense, including that of the defendant's . . . participation in the crime," satisfied this requirement. Ibid.

Under all the circumstances presented, we are not convinced that the court's failure to sua sponte give an identification charge had the clear capability to bring about an unjust result. Unlike in Davis, the evidence against defendant was substantial and included Sergeant Alston's testimony that clearly identified defendant outside his house. That testimony was corroborated by the marked currency and a phone with text messages to and from Rivas's phone about the drug transaction found in defendant's possession at the time of the arrest.

III.

With respect to defendant's second point, we note that the parties do not dispute that the doctrine of merger applies to defendant's convictions. Rather,

15

they dispute whether a remand is necessary to amend the JOC. We agree with defendant and conclude a remand is necessary.

N.J.S.A. 2C:1-8(a) governs merger of offenses and "focus[es on] whether the offense charged and the related offense share a common factual nucleus." State v. Thomas, 187 N.J. 119, 130 (2006). "[A] separate sentence should not be imposed on the count which must merge with another offense." State v. Trotman, 366 N.J. Super. 226, 237 (App. Div. 2004). Courts merge convictions where multiple counts otherwise call for "double punishment for a single wrongdoing." State v. Diaz, 144 N.J. 628, 637 (1996). Without applying the merger doctrine, a defendant's sentence could run afoul of the Double Jeopardy Clauses in the Federal and New Jersey Constitutions. State v. Eigenmann, 280 N.J. Super. 331, 336-37 (App. Div. 1995); see also U.S. Const. amend. V; N.J. Const., art. I, para. 11.

Here, counts one and three unequivocally merged into count five, as the court concluded in its oral decision. See State v. Rechtschaffer, 70 N.J. 395, 415-16 (1976); State v. Gregory, 336 N.J. Super. 601, 608 (App. Div. 2001). The court, however, erred by imposing separate sentences on each count. Moreover, the JOC states the sentence on each count is "to run concurrent" to each other and imposed various fines for each charge. Accordingly, we vacate

16

the JOC's separate sentences imposed on counts one and three and remand the matter for the limited purpose of amending the JOC to accurately reflect the merger of defendant's convictions and to correct any assessed penalties.

IV.

In his final point, defendant contends his sentence is excessive. Notably, he does not challenge the court's decision to merge counts one and three to count five or application of the aggravating and mitigating factors. Instead, he generally claims that because there was "nothing particularly egregious about the offenses" he requests we remand the matter for resentencing. We have considered these arguments and conclude they are sufficiently without "merit to warrant discussion in a written opinion." R. 2:11-3(e)(2). The sentence does not shock our conscience and was consistent with the standards detailed in the Code of Criminal Justice. See State v. Fuentes, 217 N.J. 57, 70 (2014).

Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5819-17T1